All right, please proceed. Good morning. May it please the court, Laura Myron for the government. I'd like to reserve five minutes for rebuttal. Okay, please watch your time. Certainly. The question before this court this morning is whether given the fact that the government has produced nearly 30,000 pages of records, it was appropriate to redact only the names of the agents who have been subject to allegations of misconduct in the District Court. This court has recognized in numerous previous cases like Schiffer, Hunt, and Dobrowski that individual government employees, especially those at a lower level, have a significant privacy interest in not being associated with allegations of misconduct or professional wrongdoing. And the district court here in reaching the opposite conclusion on the balance of the public versus the privacy interest at stake relied on a general that was produced in as part of their records at issue here. That's reproduced in the our excerpts of record at 51 to 88. And as we've explained in our brief, the district court's conclusion that quote, virtually no investigations took place was not supported by that record or the rest of the records that were disclosed. Let me draw you to one of the arguments that ACLU makes as to why the the names of the individual officials who are accused need to be disclosed. And that's the argument that without those names, they can't track the complaints from the original complaint through the whatever the referral is to the conclusion. How do you respond to that? So if I could make a couple of points in response, Your Honor. First, as a general matter, FOIA doesn't require the agencies to keep records in a particular manner, nor does it provide a mechanism for raising grievances against the manner of record keeping by the agencies. But specifically with regard to the records that have been produced in this case, the the plaintiffs have not demonstrated that even if they had the names of the individual agents that it would prove the marginal additional usefulness in addition to the extensive information they already have regarding date, location, the substance of the allegation, whatnot, that might allow them to draw connections between the records at issue in this case. And if I could point you to a specific example in the record, excerpts of Record 53, which is part of, as I mentioned, the Office of Inspector General spreadsheet. There's a particular complaint that was logged by the Office of Inspector General as arriving on May 8th, 2013, and involves specific allegations regarding Border Patrol agents alleged inappropriate conduct with regard to a detainee. That complaint is also in excerpts of Record 173, where you will find a report, a sample report of investigation from the Customs and Border Protection Office of Professional Responsibility. And you can tie the complaints together by the date that it was received and the substance of the allegations here. There's no identified individual in the complaint at excerpts of Record 53, and that's very common. In the vast majority of the complaints that you'll find in the records here, which are, as I mentioned, examples at 51 to 88 and 148 to 60, you'll notice that the vast majority of the complaints don't provide the name of an identified individual agent. They sometimes provide a physical description, but more often say that the alleged individual who committed the misconduct is unidentified. And so there's no reason to think that if you had the names of the agents, you would be able to draw the kinds of threads that plaintiffs are suggesting you need. And in addition, they have a substantial amount of information that might allow them to do that already. So there's — you wouldn't be able to meet the standard that this Court set out in Forest Service Employees that it would provide the kind of marginal additional usefulness that would appreciably further a public interest in light of the — especially in light of the significant privacy interests at stake here. Are you saying that the — in looking at the records, there's never a name of the person identified? Never? No, Your Honor. I'm suggesting that in the vast majority of the complaints as they're filed with the agency, the complainant has not identified by name an individual, and so that name has not been redacted in that particular record. And so what I'm suggesting is that plaintiffs cannot demonstrate, as they have suggested, that if they — if we unredacted the names of the agents where they appear throughout the record, that that would provide the kind of common thread that they're suggesting that it would, that instead the kind of information they do have, like the date of the complaint was filed, the substance of the allegations at issue, the location that it took place, that that kind of information would already, in lots of instances — certainly not all of them, but lots of instances — What they're looking for is repeat offenders. So they have to be able to identify information. If there's no names at all, they can't do it. Well, if I could, Your Honor, I think that's a slightly different public interest than what Judge Ikuda was suggesting, which was the ability to trace through the investigations and follow whether the government actually does — I'm just raising an argument that they made, and I think it's a valid one, that if there is a way of tracing repeat offenders, that that would be significant. Well, if I could, in response to that particular complaint, first of all, as I mentioned, it's difficult to tell from the record where an individual was subject to repeat allegations because, in lots of instances, a specific individual was not named. But even if you thought that there was a public interest in identifying whether there are people whose names appear more than once in the records at issue here, especially given the substantial information that plaintiffs already have, that the remedy that would be appropriate under those circumstances is not the disclosure of all of the names of the agents, including what is likely to be a large number of individuals who are not subject to repeat allegations, but would need to be something more specific. And if plaintiffs were in fact — Well, like what? Could you go to Judge Wallace's question? He's asking a much more specific question about the repeat offenders. So what is it you're suggesting? If they can't trace them — and it does seem like you're trying to have it both ways, because in one instance, you're saying there's a lot of information and they could probably figure out who some of these people are. I don't know how they would do that. But don't follow up on that now. Please just focus, if you would, on Judge Wallace's question. Sure. So, I'm sorry if I didn't respond to your question appropriately, but I take the public interest that you are identifying as whether or not someone has been subject to repeat allegations. And in order to conclude that there's, in fact, a sufficient public interest in knowing that information, notwithstanding the fact that there's no way to determine, as the district court found, the veracity of the allegations here, and so there's no way to know whether disciplinary actions were supposed to be or should have been. We know that, but if you could get to the answer to the question. Sure. So. I understand all that. Right. So what I'm saying, Your Honor, is that it's a balancing, and that given the significant privacy interest at stake here, that you would need to conclude that knowing whether there are repeat offenders would be served by the disclosure of the names at issue here, and would appreciably further that public interest. So what interest would it further? So there's so some people were identified as having multiple allegations against them, and I assume from that, there would be an inference that they were they had actually done something, because otherwise, why would there be multiple allegations? No, Your Honor. So is that a fair inference? No, I don't think that's a fair inference. Without any additional information about the veracity of the allegations, you cannot conclude that simply because someone has been subject to multiple of those complaints, the mere fact of the allegation cannot itself support the conclusion that there was some wrongdoing at issue. And this is not a case in which this is a FOIA case. It's not a case in which we're litigating the underlying veracity of the allegations as the district recognized. Getting back to Judge Wallace's question, which is that there's a separate interest, separate public interest in identifying if there are repeat offenders, and not necessarily who those people are, but are those folks being followed up on, right? Is there a robust procedure in place to follow up with any efficacy? And you indicated that if that was a concern, that separate public concern that seems to be sufficient, that the remedy, you started to say a remedy would be something more limited, and I don't think we let you finish. So I want to make sure I understand your thought there. Yes. And if I could, I think the public interest in question there would be the and I so first to answer your specific question, in order to get that information, first of all, plaintiffs could also file a more specific FOIA request, which to my knowledge they have not done, looking for records that are specifically related to individuals who have been subject to multiple allegations. Looking for repeat offenders to be isolated, whether by name or not, is that what you're suggesting? Yes, Your Honor. That the appropriate course would not be for this Court to affirm the district court's order, which requires disclosure of all the names in the records. But that's all the names, whether there are multiple allegations against them or not. Is that clear? Yes, Your Honor. And if I also might mention that there are, it is difficult to tell in many instances whether somebody is specifically the subject of an allegation or a witness or someone who's been identified as hardy in interest, and so it would also need to be something that specifically sets out how you figure out which agents are in fact subject to multiple complaints, which is very difficult given the nature of the records at issue here, where many of the complaints don't specifically name an individual by name. Some of them give a physical description, but most have, as I said, an unidentified individual who has been subject to some allegation on a certain date and location. So, and as I mentioned, plaintiffs could, if they wanted, that specific information file an additional more limited FOIA request. To my knowledge, they have not done so. But if I could touch, I believe, on the point you're making, Judge Kristin, about the question of whether there have been sufficient investigation of repeat allegations, I think that's slightly different than the other. The mere identification of the allegations, and if I could briefly touch on that. That speaks to the district court's conclusion, which we contend was incorrect about there being, quote, virtually no investigations. There, as the record demonstrates, were substantial investigations, and in- I think it's a little different, and I appreciate you're starting with the notation about the spreadsheet and the misunderstanding about the annotation that helps to interpret that spreadsheet, that's helpful. But they have articulated a separate interest, one that is not trying to reinvent the government's investigation, but is instead the public's interest in verifying that there is an apparatus in place that is functional, right? Yes. And so that's what I was speaking to. Two points. The first is that the suggestion that the government is not sufficiently investigating the allegations at issue here is the kind of allegation of misconduct that they would need to produce a meaningful evidentiary showing under Favish, which we submit they have not done. But in any event, this Court has recognized in cases like Forest Service employees, which I would note is an Exemption 6 case, and is less- But I'm just to be clear, we're communicating. I'm asking you to turn the page and talk about the other public interest that they've- The question of investigation. So as I mentioned, they have not submitted any evidence that would demonstrate in a meaningful manner that the government is failing to investigate these complaints. But let me ask about, just taking it a step further. So if the DHS provided all this information, there's certainly some evidence that their investigations are, have some problems. And in fact, the reports that were done by the DHS's own consultants, Pivotal something, indicated there were some problems. So what would that mean? If in fact all of the data that was presented in the FOIA request provided the ACLU with the information that there were problems with the DHS's investigation apparatus, how does that relate to the names that were redacted? Well, why would they be entitled to the redacted names, I guess is my question. If anything, Your Honor, I agree. If the, as the ACLU's own report and a number of reports from government oversight entities demonstrate, there have been some issues with investigation, which they, in the time since 2014, which is the time of the FOIA request, the agency has been working on, including Inspector General reports from 2016, 2018, reports to Congress, as we've cited in our brief. But that just demonstrates that given the substantial information that's both available in the records here and generally to the public, that the public interest in overseeing the quality of investigations would not be appreciably furthered by knowing the names of specific individual agents who have been subject to allegations of misconduct and subject to these kinds of investigations. Have there been a case where the favish presumption is rebutted, and there is information that would make a reasonable person think that the investigations were inadequate or the government had failed in some way, that the court then went on to provide redacted names? Are you aware of a case? Not from this court, Your Honor, as far as I know. In fact, the cases largely go the other way, that where there are allegations of the kind of issue here, that the government has not been investigating claims properly. The court has said that the significant privacy interests of the individuals who are named in those investigative documents outweighs any public interest in supervising the case. I think Judge Christian has a question. Not at all. Thank you. You just indicated that your position is that the public interest in knowing that there is a follow-up wouldn't be furthered by knowing individual names, and I think that circles back to Judge Wallace's point, which is, would the public's interest in verifying that there is, that follow-up is happening, would that interest be furthered by knowing whether there are repeat offenders? Not necessarily, Your Honor. Why is that? Well, without any knowledge about whether the allegations were true or not, which the district court recognized cannot be substantiated in this case and isn't at issue in this case, there's no basis to conclude that the investigations weren't sufficiently thorough or weren't appropriate, even if they're against an individual who's been named more than once. Well, in some instances there are. In some instances there are some problems, as Judge Acuda indicated, and in some instances, if nothing else, and this isn't, by the way, this question isn't aimed at a criticism of the process. It's inherently difficult because people are moving through quickly. So given that that is the situation, in some of the instances the follow-up, of course, comes months later, and so the fact that something can't be verified, pretty problematic because people aren't there anymore, right? So that's, understanding the situation that we're dealing with, I question your position, and I'd appreciate to hear more about why you think the public's interest wouldn't be furthered in verifying one way or another, whether there are really a cluster of complaints around particular employees, whether we know the name of that employee or not. Well, Your Honor, if you're suggesting, and I think plaintiffs have suggested that, the government is not sufficiently investigating those complaints. I am not. I am not suggesting that. Well, I don't think in this case, as in, you know, Forest Service employees and Lauren Schiffer, Hunt, Dobronski, that that particular public interest, even if it would be served by knowing that there are, in fact, allegations against an individual, can outweigh the significant privacy interest at stake. And if I could reserve the remainder of my time for rebuttal. Okay. Thank you. We'll hear from the ACLU. Good morning, Your Honors, and may it please the Court. Appellants raise a number of issues that I will address, but I first want to highlight three ways in which this case is exceptional and very different from Forest Services and Lair and the other cases that they cite. First, the investigations at issue here just aren't like the investigations there, which often involved a single incident in which there were multiple completed government investigations which were made public and where, therefore, the marginal additional utility of the information sought really wasn't going to further the public interest that had been identified. Second, this is a problem that really is of the government's own making. And if it hasn't been cleared so far, I'd like to emphasize that we would gladly accept some alternative other than the names of these officials if that would allow us to trace the information that is available here. Has that been discussed between counsel? Yes, Your Honor. We tried to raise this issue with counsel prior to summary judgment briefing, and they refused to engage, unfortunately. It's too bad you haven't gone to our mediation program. And, Your Honor, we would be glad to consider mediation. Our purpose here is to further the public's understanding of these critical investigation processes and this oversight. Okay. Let's assume you've got a good reason for what you're trying to do. But clearly, the government has a reason not to forgive the names. They don't even know if there was anything to these. And then it goes to the New York Times and they mention the names and the person. So they've got a good interest, too. Yes, Your Honor. So your position is that you don't need the names if there's a way of identifying types, that is, that you could give a number to each of these because you want the end result. That's correct. And it strikes me that in a case like this where both sides are right, we're not put in a position that's a very friendly one. And it strikes me also that both sides would win if you could identify the actual process without identifying the name of the individual. We agree. And I would strongly encourage both sides to try and do this. We have win-win mediation. We do all the sides. This is ideal case for win-win mediation. But I'm not suggesting you have to do that because I have no right to do that. I'm just pointing it out in answer to your question. I understand, Your Honor. And again, this is something that we, too, we've tried to understand these crucial records in a way that would permit the public to answer the questions that we've raised and brief about what's happening, what's the extent of what's happening, and how is what's happening being addressed. But, counsel, those are different public interests. You're right. We have case law about that. Oh, no. And we keep slipping into that that's really different than the public interest in verifying that follow-up is occurring. Hence, I think you have a much stronger argument. This is just me speaking. Your Honor, you're absolutely right. I'll just finish if I could. When you talk about the interest in knowing whether there are repeat offenders, is there a cluster around individuals and following up accordingly, right? Yes, Your Honor. As opposed to wanting to follow up on individual names. I'm sorry if I'm not being clear. We have said over and over again that we are not trying to reinvent these investigations. There would be no way to do so just as a factual matter. These are past occurrences. As you noted, this is a transient population. The ship has sailed. We're trying to understand, one, the repeat offender problem, which you identify, and two, what happens with a complaint from start to finish. That's not to reinvestigate it, but just to understand, when a complaint is taken by OIG, which has the right of first refusal. Did you look at the tracking numbers that were on the various? Yes, Your Honor. In fact, when I went through and looked at the tracking numbers, the dates, and the like, there certainly were more of them that allowed tracking from complaints through to conclusion. And they were rarely names. So it was curious to me why the names seemed so crucial when they obviously raised significant privacy interests. There was lots of unique identifiers on all of these documents. Yes. In fact, Your Honor, that's part of the problem. Each DHS oversight entity uses its own system of complaint numbering. So when OIG refers a complaint to a different entity, that entity assigns a different number. And there's no way to actually follow. Well, I saw numerous documents that had both numbers on it. So I'll point you to some that have many numbers. In the brief. In the record. In the brief, you only cited one document that didn't have identifiers on it. Your Honor, at the supplemental excerpts of Record 168, you have an example of an OIG case summary report that describes a single complaint with multiple different records. You also have complaints that are grouped together without unique numbers. And that's, for example, at the supplemental excerpts of Record 182 to 183. I guess I did not see in your brief, however, any strong explanation of showing me why the names of individuals were required for tracking. There was a single site to a document that didn't have any numbers on it. And otherwise, there was not, there was a real gap. It was more allegations, conclusory allegations. So we actually, I think if you look at the documents that are in the beginning of our SCR, there's actually 10 or 12 pages that are examples. And I know we did cite to these. So at SCR 2 to 3, for example, you have a CRCL complaint that is forwarded to CBP. There's no way to check the CBP production that we received against that complaint to see what CBP did with that complaint upon receipt of the referral. Even the spreadsheet that counsel referred to, which has many different complaint numbers, we did try to make sense of those numbers. We tried to go through the different components and see if we could match them up. To the extent that that's a factual issue, is that something that should not be decided on summary judgment? Is the question about whether things are trackable or not something that would need to be considered in an evidentiary setting? Well, as this Court said on Bonk and ALDF, if there are questions of material fact in a FOIA case, then the correct procedural posture is evidentiary hearing or further factual development of the record by the district court. And we would submit that that would be appropriate here to the extent that those questions trouble this Court. This Court's review is de novo, and we do think that there is sufficient record evidence before you to identify where these gaps truly exist. But again, if that's a question- But we're hamstrung, forgive me for interrupting, counsel, I didn't mean to. We are a little bit hamstrung, it's a little unusual because we have a very diligent district court judge who had information. I was operating under a mistaken understanding. I think the government assumed that he knew something he didn't know, it was available on the website. So now what we have is briefings saying, oh, there's this information, this key that explains a spreadsheet. Did anybody circle back and give that information to the district court to take the next step? As far as I can tell, they never did, and that information was available before summary judgment commenced in this proceeding, which is why we argue that the argument is waived. And we also, I submit, Your Honor, that the notations that the government has provided do not actually change the way the district court understood it. Well, it might have changed the district court's ruling. It's possible. And it's tough for us to know what the district court would have done if it had all that information, understood what the government is now saying about how to interpret that spreadsheet. And so the kind of tinkering that I feel like we're kind of suggesting here is something that typically happens in the trial court. I'm not criticizing the trial court. I think he didn't have this information. Because the government had not provided it. We are where we are at this point. So for our purposes, given that there are very serious privacy interests here, and I think, just speaking for myself, also a very important competing interest in knowing that there is a robust system in place to follow up. I feel like we're maybe delving into something that the trial court would typically consider in the first instance. So there's not been a discussion of circling back to the trial court with the key to the spreadsheet? No, Your Honor. The government did not make that available, even on reconsideration to the trial court. Let me just ask you a slightly different question. As I had mentioned to opposing counsel, there certainly is evidence of problems with DHS follow-up and investigation, including their own consultant's report about it. And other evidence in the record that the ACLU has pointed at. And so it seemed to me that ACLU has evidence about problems with DHS's program. I'm just not sure how that leads to getting the redacted names of the individuals. That seems the only purpose there is with the tracking we discussed. Allegations against, repeated allegations. I don't think we can call them repeat offenders since it hasn't been substantiated, but repeated allegations. And then now you're talking about, well, the investigation, it will show us something about the investigation. I'm having trouble with why the redacted names provide you with any material, or I think we say appreciably furthers the ACLU's ability to understand the gaps or any problems. Yes, Your Honor. This goes to the marginal additional utility point, which is typically addressed at that third step of the Tuffley balancing analysis. And we would submit that looking at the record as produced by the government here, we still don't know the number of complaints that the Department of Homeland Security received during this period of time from 2009 to 2014. We don't know the total number of officials against whom allegations were submitted. We don't know their rank or level of responsibility, whether they were promoted. I mean, the amount of information that we don't have is actually a lot. And just because there's some information in the public record about these problems doesn't- So they gave a spreadsheet of what they allege were all of the complaints between these periods, the 214 complaints. I'm sorry, that's not, the government has never established that that's an exhaustive list. That's only one of the sub-components, just OIG. That goes to your FOIA request and whether they, that's a different issue. That's not before us, whether their response to your FOIA request was complete or not. And we're focusing on a much narrower issue, which is what is the provision of the names of these low-level individuals, how that appreciably furthers the public's right to know what the government is up to. And that's where I'm questioning. So let me, I'll give two points, one factual and one legal. I'll start with the legal point. In AILA versus EOIR, the DC Circuit was faced with a similar situation, where a advocacy organization wanted information regarding how EOIR handled complaints lodged against immigration judges. And the agency there actually produced a much more coherent record. There were a known number of immigration judges, we don't have that here. There were 740-some-odd isolated, discrete complaints that were actually sort of grouped in a way that you could count the number total. And the DC Circuit said that even there, the categorical withholding of the immigration judge's names was improper under FOIA's privacy exemptions. Because there was still so much information that the public didn't know. For example, how many complaints had been alleged against each judge. Whether any of those complaints or what proportion of those complaints were substantiated versus not substantiated. And we submit that this case is very similar to that case. In terms of the lower level officials point, again, we recognize that there is a privacy interest here. And we would accept something other than the names that would allow us to make sense of the records that we have. But also, Your Honor, these Department of Homeland Security officials are the line level officers who interact with these children. There are no other federal government officials who interact with these children. They're the ones who have primary responsibility. Right, but how does that go to the public's right to know that the DHS is not investigating? I mean, that, I understand your argument, but then it starts sounding like we want to reinvestigate, we want to publish their names, we want to harass them. The district court itself said, publishing the names of these individuals will put them in danger. Your Honor, we've consistently emphasized two separate public interests. And I know that sometimes they seem like they collapse on each other. But the question of who these officers are and the role that they play, to the extent that, yes, they have a privacy interest. But at the balancing stage, when you have to consider the public interest in knowing their identities. Which is what? Which is the public interest in knowing that these individuals. Is that the argument you're making? That there is a public interest in knowing the identities of them? So- No, Your Honor, in knowing whether there are certain officials. Again, the officials who have the statutory and law enforcement responsibility of interacting with these children. Whether they are, if there are repeat offenders, if there are people against whom there are repeat allegations. And then how the oversight side of how- I said we're getting back to whether DHS is falling down on the job of investigating. There's two public interests. And what's the other one? Whether there are repeat- But that is just, that's just a statement. The question is whether DHS is falling down as an investigation. Whether there are multiple complaints against individuals. I'm not understanding how that shows what the government is up to. We might be saying the same thing in two different ways. It may be that you understand our public interest collectively as effectively about this oversight question. We think that to assess the oversight, you have to know how, among other things, the oversight agencies deal with repeat offenders. Okay, so that's your public interest? How, whether DHS is appropriately investigating and disciplining people against whom there have been multiple allegations? Or even if there's just one single but very substantial or troubling allegation, Your Honor. I think also the public has an interest in understanding how oversight functions separate and apart from the officers themselves. I think that the reports that we put in the record indicate that this is something that is of significant public interest. The agency itself has identified serious limitations in its oversight function that can be mission compromising. Well, and toughly, there was a high interest in determining whether the aliens who were released as part of this program were going out, who had criminal backgrounds, were going out and committing additional offenses. I think there was a high public interest in that. But we nevertheless said it couldn't outweigh their interest in privacy. There, these individuals had actually been convicted of these criminal offenses. I think the key language in Tuffley that is distinguishable is where the court talks about how the public already had all of the information that was available to ICE when ICE made the decision to release those individuals. And here, as I've identified, there are a number of things- Other than their names, right? That's right, and that's not- There was a concern about tying up their names with the criminal complaint and the allegation. That's correct. So the information that was going to be public seems like it's the same issue here. I would disagree, Your Honor. I think, again, our purpose is not, we're not seeking the names for the sake of the names. We're trying to make sense of the records that are in front of us. And so I would say that the nexus between the names here and the information sought, the names here and the public interest that we've identified is very different from that in Tuffley and in Forest Service employees and in Lair. I think we, again, we would accept some alternative to the names that would allow the public to look at the records that we've obtained and make sense of them. And I think that there are cases where agencies have done that. To answer an earlier question that you asked of counsel in terms of has there ever been a case where there's a fabish showing and the names have been ordered released? The answer is Casa de Maryland, which is a Fourth Circuit decision, which we cite, which the district court cites, which the government never addresses in any of its briefing. In that case, there was a single incident, a raid, where the agency itself undertook an investigation of the alleged racial profiling that had occurred during that law enforcement activity. And found that all of the allegations of misconduct were unsubstantiated. And the court nevertheless said that the information had to be released because the public had a right to understand whether the investigation itself had been conducted properly and whether the conclusions of that investigation were warranted. And this court has recognized time and time again that there is a public interest in understanding how these government agencies operate. Cameron Nessie made that point as well. The facts there were very different because you had a record of congressional oversight and public reports that were sufficient to allow the public to answer the questions that the requesters had. To answer or to address the point that we should have somehow brought a different kind of FOIA. Our FOIA request is in the record. I think that the categories that are included in it are such that council is mistaken in that we had some obligation to file a different request for discipline. Our request very specifically addresses discipline. And I don't know how a different request would have changed the outcome here, given the way the government has chosen to engage. On the one last point on the disciplinary point, and I think this is an important factual point to clarify for the record. The government has said that part of the reason there aren't more disciplinary records before us is because of the timing of our request. Our request was filed in December 2014. The administrative complaint that triggered the impetus for our request was in June 2014. That's six months. But our request goes from 2009 through 2014. So even if there were cases where there was still a pending investigation and it just hadn't concluded and discipline hadn't been imposed, that's, I would submit, not possible to be the majority of the cases here. The one disciplinary record we do have from the government in response to this FOIA request, we got exactly one, pertained to an incident that occurred in November 2008, and the discipline was imposed in July 2009. So within a year. And so it stands to reason that if we have a request that spans five years, there should have been more disciplinary records. And the thing that we established in our brief, Your Honors, is that without robust reports of investigation by OIG, by CRCL, by Internal Affairs, the entity that imposes discipline in the Department of Homeland Security cannot do its job. And so that is, I think, another important factual clarification for the record. And if there are no further questions, thank you. I have some time for rebuttal. Thank you, Your Honor. If I could make two quick points on rebuttal. A lot of the concerns that opposing counsel has raised with regard to the information they're missing could be filled in by filing a new FOIA request, looking for more specific information. To my knowledge, they have not done so, but the complaints about this being a lot of information and a very broad production in response to their request isn't before this Court, nor is the adequacy of the request. But she's right. Her request is very broad. Yes, Your Honor. And as a result, she got nearly 30,000 pages of documents that address a number of issues. And to the extent she has raised issues about the adequacy of the response, that's, again, not before this Court. Her problem, clearly her problem is that she's trying to make heads or tails of it. And the government, again, I am not casting aspersions. It's just that I think it is correct that this record is such that you've understandably redacted names. And she's left with case numbers as the complaints are referred, as you know, from constituent group to constituent group for some reason. Maybe it's just customer history, but they start with a new case number. So her hands are tied. No, Your Honor. We've also noted that there is a lot of information that has been disclosed, including date, substance of allegation, and whatnot, that would allow, in addition to case numbers, for threads to be drawn between the various documents. But if I could briefly address the second point as well, I think some of the questions from Your Honor and from Judge Wallace suggest that there are substantial interests on both sides. And that's always the case in Exemption 6 and 7 cases, which require the Court to balance the privacy interests of the individual against the public interest at stake. And to draw a conclusion about which outweighs the other. And in the vast majority of cases that are similar to this case, including, as I mentioned before, Forest Services, Lahr, Dobronsky, Schifferhunt, the Court came to the conclusion in the majority of those cases, especially the Exemption 7C cases, that the significant privacy interests at stake outweighed the public interest. But the district court came to a different conclusion here, and here you are. And I'm concerned about this key that you, about the spreadsheet that you've indicated and explained clearly on appeal. Opposing counsel said that that wasn't, you didn't circle back on the request for reconsideration to inform the district court of that. Is that correct? Yes, Your Honor, but if I could, the issue was raised in the response to the motion for reconsideration, and the local rules preclude a reply. So there wasn't an opportunity before the district court to raise that. Okay. Again, I'm not casting aspersions. I'm wondering whether we should consider that in the first instance, or should we let the district court take another look at that and see whether he's going to, he would weigh this privacy interest in the same way. No, Your Honor. The balancing here is a legal question, and this Court should consider the interests on both sides, and I submit, in light, following the example of the previous cases of this circuit, come to the conclusion that the significant privacy interest at daycare cannot be outweighed by the public interest articulated by opposing counsel. And I see I'm out of time. But if there are no further questions, I'm asking that you let me converse. We thank both sides for their argument in the case of ACLU of Arizona and ACLU Foundation v. Department of Homeland Security is submitted, and we're adjourned for this session.
judges: Wallace, Ikuta, Christen